IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02977-REB-KLM

IOWA PACIFIC HOLDINGS, LLC,

   Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORPORATION,

   Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's oral Motion to compel the production of certain documents that Defendant has deemed to be privileged.  In compliance with the Court's procedures for resolving discovery disputes, the parties contacted the Court to set a hearing to address the issues.  The Court conducted a hearing on March 23, 2011 [Docket No. 100] and a supplemental hearing on April 4, 2011 [Docket No. 101].  The Court directed the parties to submit documents summarizing the dispute.  The parties have now done so (relevant documents have been attached to this Order).  Having considered the parties' arguments and supporting documents,

IT IS HEREBY **ORDERED** that Plaintiff's oral Motion is **GRANTED in part, DENIED in part and HELD IN ABEYANCE in part**.  The Court's ruling is explained below.

This matter involves a failed contractual relationship between the parties. Specifically, the parties were in negotiations to provide train service between Denver and Winter Park, Colorado for the 2009-10 ski season.  Pursuant to the negotiations, Plaintiff

would supply the train and Defendant would provide a crew and rail access ("Ski Train"). *See Scheduling Order* [#35] at 2. After discussions for the Ski Train broke down, Plaintiff filed this lawsuit, which alleges claims against Defendant for breach of an oral contract and promissory estoppel. *Id.* In defense of Plaintiff's claims, Defendant argues that the parties never reached a legally enforceable agreement. *Id.* at 6.

The present discovery dispute involves one-hundred seventy (170) documents listed in Defendant's privilege log that Defendant has refused to produce on the grounds that the documents are protected by the attorney-client privilege. Plaintiff raises five arguments for production of the documents at issue: (1) documents written by non-attorneys which contain facts relayed to an attorney are not privileged; (2) documents written by non-attorneys regarding the terms of an agreement between the parties and other business matters, and not for the purpose of seeking legal advice, are not privileged; (3) draft contacts which do not contain comments or mental impressions are not privileged; (4) documents written by non-attorneys to non-attorneys, and which merely copy attorneys, are not privileged; and (5) documents which contain information publicly disclosed by Defendant during the temporary restraining order ("TRO") stage of the case are not privileged.

As a preliminary matter, Plaintiff contends that all of the one-hundred seventy documents (170) are discoverable on the basis that they contain business, as opposed to legal, advice. Plaintiff also contends that Defendant has waived any privilege associated with each of the one-hundred seventy (170) documents (with the exception of one, 4653_00001) by virtue of Defendant's alleged public disclosure of its basis for desiring

insurance and indemnity terms to be included in the Ski Train contract.[1]

As best as the Court can determine, the documents which Plaintiff contends should be disclosed on the basis of their alleged inclusion of factual information are Bates Nos.: 1132, 352, 256, 2345, 2345_00001, 2899, 9135, 2080, 475, 5334, 674, 8514, 6802, 973, 609, 6663, 496, 1040, 5319, 1711, 5952, 687, 4345, 3324, 50, 3518, 4503, 2057, 2036, 1823, 4465, 7142, 1624, 855, 7356, 790, 589, 293, 668, 1177, 1053, 5618, 1417, 1645, 4374, 3536, 4472, 1646, 189, 2196, 932, 1777, 9034, 2161, 6634, 8392, 1197, 5665, 4005, 2257, 2444_00002, 4438_00002, 2334, 136, 958, 420, 1661, 119, 7704, 1509 and 604.

As best as the Court can determine, the documents which Plaintiff also contends should be disclosed on the basis that they are draft contracts are Bates Nos.: 256_00001, 247_00001, 2345_00002, 2345_00003, 2345_00004, 3396_00001, 3396_00002, 3652_00001, 7222_00001, 5107_00001, 475_00001, 2916_00001, 5504_00001,

---

[1] The following is a complete list of the documents at issue listed by Bates Nos.: 2518, 1132, 352, 352_00001, 256, 256_00001, 2477, 2477_00001, 2345, 2345_00001, 2345_00002, 2345_00003, 2345_00004, 2899, 9135, 2080, 3396_00001, 3396_ 00002, 3652_00001, 7222_00001, 5107_00001, 475, 475_00001, 2916, 2916_00001, 5504_00001, 3372_00001, 5382_00001, 5334, 1716, 6581_00001, 4815, 4815_00001, 8395, 8395_00001, 665, 665_00001, 4653_00001, 8386_00001, 674, 8514, 2518_00001, 3827_00001, 6154_00001, 6802, 6802_00001, 5136_00001, 3688_00001, 973, 609, 1595_00001, 213_00001, 6663, 1272, 496, 1040, 1040_00001, 5319, 1711, 5952, 5952_00001, 5895_00001, 687, 4345, 5438_00001, 3324, 3324_00001, 1093_00001, 3665_00001, 50, 50_00001, 1390_00001, 1138_00001, 3518, 3518_00001, 2580, 868, 4503, 4503_00002, 105, 105_00001, 3453_00001, 2057, 2036, 2036_00001, 1823, 4465, 4465_00001, 7142, 1624, 855, 7356, 790, 6095, 4581, 589, 293, 293_00001, 4169_00001, 1112_00001, 668, 3415, 1177, 1177_00001, 1053, 1053_00001, 5618, 1417, 1645, 1645_00001, 147, 755_00001, 4374, 4374_00001, 3536, 4472, 1646, 189, 2196, 932, 1777, 5253_00001, 583, 9034, 1128, 2161, 4992_00001, 4992_00002, 4260_00001, 4260_00002, 6634, 6634_00001, 4488_00001, 8392, 8382_00001, 1197, 5665, 1762, 4005, 1077, 2257, 2444_00001, 2444_00002, 2444_00003, 2444_00004, 2444_00005, 4438_00001, 44438_00002, 4438_00003, 4438_00004, 4438_00005, 2334, 136, 958, 4546_00001, 420, 420_00001, 5967, 1661, 5807, 119, 119_00001, 4807, 4221, 4221_00001, 2895, 7704, 1509 and 604.

3372_00001, 5382_00001, 6581_00001, 4815_00001, 8395_00001, 665_00001, 4653_00001, 8386_00001, 2518_00001, 3827_00001, 6154_00001, 6802_00001, 5136_00001, 3688_00001, 1595_00001, 213_00001, 1040_00001, 5952_00001, 5895_00001, 5438_00001, 3324_00001, 1093_00001, 3665_00001, 50_00001, 1390_00001, 1138_00001, 3518_00001, 4503_00002, 105_00001, 3453_00001, 2036_00001, 4465_00001, 293_00001, 4169_00001, 1112_00001, 1177_00001, 1053_00001, 1645_00001, 755_00001, 4374_00001, 5253_00001, 4992_00001, 4992_00002, 4260_00001, 4260_00002, 6634_00001, 4488_00001, 8382_00001, 2444_00001, 2444_00003, 2444_00004, 2444_00005, 4438_00001, 4438_00003, 4438_00004, 4438_00005, 4546_00001, 420_00001, 119_00001 and 4221_00001.

As best as the Court can determine, the documents which Plaintiff contends should be disclosed on the basis that they are written by non-attorneys to non-attorneys are Bates Nos. 2345, 496, 1040, 1711, 5952, 687, 4345, 3518, 2057, 2036, 1823, 4465, 7142, 589, 668, 1177, 1645, 4374, 4472, 189, 932, 1197, 4005 and 2334.

### I. Factual Material

The Court first addresses whether the inclusion of factual material in attorney-client communication renders such material discoverable.[2] Both parties rely on *Upjohn Co. v. United States*, 449 U.S. 383 (1981) in relation to this issue. Specifically, *Upjohn* generally

---

[2] Although neither party directly addresses whether state or federal law applies here, the parties appear to assume that state law governs. Given that the Court's subject matter jurisdiction is based upon diversity jurisdiction, the Court applies state law where appropriate. *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998) (stating that "state law supplies the rule of decision on privilege in diversity cases"). Under Colorado law, the party seeking the protection of the attorney-client privilege has the burden of proof generally; however, the burden shifts to the party claiming a waiver of the privilege. *Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 467 (Colo. Ct. App. 2003).

stands for the proposition that while the attorney-client privilege protects communications between clients and attorneys, it does not protect the underlying facts contained within those communications. *Id.* at 395-96. For example, while a client can be compelled to disclose the relevant facts that he conveyed to his attorney, he "cannot be compelled to answer the question, 'What did you say or write to the attorney?'." *Gordon v. Boyles*, 9. P.3d 1106, 1123 (Colo. 2000) (quoting *Upjohn*, 449 U.S. at 396).

*Upjohn* stands for the proposition that although factual information is not protected by the attorney-client privilege, a blanket request for a party's communications to its lawyer is prohibited.[3] The Court finds that the latter is precisely what is being sought by Plaintiff here. According to Defendant, the documents sought under this theory were all communications by Defendant's agents to counsel for the purpose of receiving legal assistance. The fact that the communications may contain facts does not make them discoverable in their present form. Rather, *Upjohn* merely permits Plaintiff to ask Defendant about the relevant facts of the case apart from any communications that Defendant may have had about those facts with its counsel. The purpose of the fact exception is to prevent parties from claiming that they are immune from interrogation about

---

[3] In order for communications between a corporate Defendant's agents and its attorney to be protected by the attorney-client privilege, the following factors must be shown: (1) that the information was necessary for the provision of legal advice, (2) the communications concerned matters within the scope of the agent's corporate duties, (3) the agents were aware that their communications were made for the purpose of counsel rendering legal advice to the corporate client; and (4) the communications were treated as confidential. *Alliance Constr. Solutions, Inc. v. DOC,* 54 P.3d 861, 865 (Colo. 2002) (citing *Upjohn*, 449 U.S. at 394-95). Although Plaintiff does not appear to contend that these communications are not entitled to privilege generally, the Court has reviewed the privilege log and affidavits provided by Defendant related to this issue and concludes that the communications at issue here appear to fall within each of the four *Upjohn* factors. *See Defendant's Privilege Log*; *McCarthy Affidavit* at 1-3; *Roberts Affidavit* at 1-2.

the relevant facts of the case merely because they have been disclosed to counsel. *See Gordon*, 9 P.3d at 1123-24 (citation omitted). Disclosure of the documents at issue here does not fall within the purpose of the exception as there is no evidence that Defendant is otherwise refusing to disclose facts in discovery that it believes to be relevant to the litigation.

The cases cited by Plaintiff in relation to this issue are inapposite. For example, a holding by a court in this District that portions of a letter between a client and his attorney were not privileged because they contained a factual statement obtained from a third party does not speak to the present issue. *See Marianist Province of the U.S., Inc. v. Century Indem. Co.*, No. 08-cv-01760-WYD-MEH, 2010 WL 3604388, at *3 (D. Colo. Sept. 7, 2010) (unpublished decision). Furthermore, the holding in *National Farmers Union Property & Casualty Co. v. City & County of Denver*, 718 P.2d 1044, 1049 (Colo. 1986), namely that client interview notes are not protected when the attorney is acting merely as an investigator rather than legal counsel, is equally unpersuasive. As noted earlier, Plaintiff does not appear to argue that the overall communications are not privileged, but merely argues that the facts contained therein should not be protected. Here, the Court has already found that the four *Upjohn* factors squarely place the communications at issue within the protection of the attorney-client privilege.

Accordingly, Plaintiff's oral Motion to compel the production of certain documents on the basis of their purported inclusion of facts is denied.

## II. Business Advice vs. Legal Advice

Next, the Court addresses whether the documents at issue are discoverable due to Plaintiff's contention that they contain business, as opposed to legal, advice. This Court

has previously noted that "[b]ecause the privilege promotes the 'dissemination of sound legal advice,' it applies only where the advice is legal in nature, and not where the lawyer provides non-legal business advice." *See Pownell v. Credo Petroleum Corp.*, No. 09-cv-01540-WYD-KLM, 2011 WL 1045418, at *2 (D. Colo. Mar. 17, 2011) (unpublished decision) (citations omitted). Here, after reviewing the privilege log and affidavits, I find that Defendant has met its burden of alleging that the documents are privileged. Moreover, other than Plaintiff's self-serving and conclusory statements, there is no evidence that the withheld documents were created for purposes of rendering business advice. Indeed, through its agents, Defendant avers that such documents reflect legal advice and should therefore be protected. *See McCarthy Affidavit* at 1-3; *Roberts Affidavit* at 1-2. On the record before the Court, other than Plaintiff's baseless speculation, there is no basis to conduct an *in camera* review or to order the production of these documents.

Accordingly, Plaintiff's oral Motion to compel the production of the one-hundred seventy (170) documents at issue here on the basis of their purported inclusion of business advice is denied.

### III. Draft Ski Train Contracts

Next, the Court addresses whether draft contracts which do not contain attorney notations are discoverable. Plaintiff contends that "draft business documents . . . are generally not deemed to be attorney-client privileged in Tenth Circuit jurisprudence." *Plaintiff's Letter* at 2. By contrast, Defendant argues that draft contracts, regardless of the existence of attorney notations, reflect the work and mental impressions of an attorney derived from communications with the client such that they are protected. *Defendant's Letter* at 4. Neither party directs the Court to consider a Colorado case regarding this

7

issue. Nevertheless, the Court is persuaded by the arguments and law raised by Defendant. Specifically, "preliminary draft contracts . . . reflect not only client confidences, but also legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege." *Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997) (citing *Muller v. Walt Disney Prods.*, 871 F. Supp. 678, 682 (S.D.N.Y. 1994); *Schenet v. Anderson*, 678 F. Supp. 1280, 1284 (E.D. Mich. 1988)).

The cases cited above accord with general principles espoused by Colorado courts. For example, "[j]ust as the client cannot be compelled to testify about what she told her attorney, the attorney cannot be compelled to produce documents from his file that reflect what the client told him." *People v. Trujillo*, 144 P.3d 539, 545 (Colo. 2006). In essence, a draft contract which was prepared by an attorney with the assistance of his client contains information communicated between attorney and client and ought to be protected as such. Furthermore, nothing can be gained by the Court conducting an *in camera* review of the draft contracts. Such review "has serious implications and should be undertaken only in the clearest of cases, when the information sought to be discovered is well defined and all other reasonable means of discovering the information have been exhausted." *Id.* at 543 (citation omitted). To that end, a review of the draft contracts will not reveal whether, in fact, they reflect attorney-client communication. In this instance, the Court must rely on the well-reasoned representation of Defendant that they do. Moreover, as noted by Defendant, Plaintiff has access to draft contracts prepared by Defendant and circulated during negotiations. *See Schenet*, 678 F. Supp. at 1284 (recognizing that "[t]he privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties"); *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 485 (D. Kan. 1997) (noting the

general rule that drafts "to be submitted to third parties, although prepared by counsel, are not generally privileged . . . . [because s]ubmission of the document to the third party removes any cloak of privilege").[4]

In an analogous case cited by Plaintiff for the proposition that draft documents are generally discoverable, the Court notes that there, the court ultimately rejected the general proposition with respect to draft patent applications. *See Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 Civ. 8815, 2000 WL 351411, at *16-17 (S.D.N.Y. 2000) (unpublished decision). Specifically, the court disagreed with the notion that because the draft patent application was prepared for the purpose of ultimately circulating it to a third party, no protection pursuant to the attorney-client privilege could be afforded. *Id.* at *17. As with draft patent applications, draft contracts "often contain information and communications . . . which are intended to be considered confidential between attorney and client and are therefore privileged." *Id.* (citation omitted). Absent a more compelling argument by Plaintiff, the Court agrees with the cases cited by Defendant that draft contracts, which Defendant represents were created via attorney-client communication, should be protected from disclosure.

Accordingly, Plaintiff's oral Motion to compel the production of certain draft contracts is denied.

### IV. Non-Attorney Emails to Non-Attorneys

Next, the Court addresses whether certain non-attorney emails are privileged. The

---

[4] While, under these holdings, the Court could order disclosure of the draft contracts with the terms not ultimately circulated during negotiations redacted, it is likely that such disclosure would be cumulative because, as noted above, Plaintiff already has access to the terms disclosed in negotiations. *See Defendant's Letter* at 5.

sole basis for Plaintiff's objection is that "documents prepared by non-attorneys to non-attorneys and copying lawyers" are not privileged. *Plaintiff's Letter* at 3. However, as Defendant notes, of the twenty-four documents at issue, an attorney is a direct, as opposed to a carbon copied, recipient on all but five emails. *Defendant's Letter* at 5. While merely copying an attorney on an email may not be sufficient to invoke the privilege, see *Pownell*, 2011 WL 1045418, at *4, Defendant argues that the documents at issue, with two minor exceptions (which have now been disclosed to Plaintiff), were created for the purpose of securing legal advice. In the context of the nineteen emails where an attorney is a direct recipient of an email and Defendant contends that the emails were sent for purposes of securing legal advice, the Court is satisfied with the Defendant's representation. However, as in *Pownell*, where an attorney is merely carbon copied on an email, and there is no further proof that an attorney was included for the purpose of seeking legal advice, an *in camera* inspection is necessary. *See id.* Therefore, I find that Defendant has not met its burden of alleging that the aforementioned five emails are privileged.

Accordingly, with respect to Plaintiff's request for production of emails directly emailed to counsel, the oral Motion to compel is denied. With respect to Plaintiff's request for production of emails carbon copied to counsel, the oral Motion to compel is held in abeyance for the Court to conduct an *in camera* review of the five documents at issue here.[5] To this end, Defendant shall produce the five documents to the Court via email submission on or before **April 21, 2011**.

---

[5] Although Defendant appears to have disclosed portions of two of the five emails to Plaintiff, see *Defendant's Letter* at 5 & Ex. 4, because those documents have been redacted, the Court determines that *in camera* review of all five emails remains warranted.

## V. Waiver

Finally, the Court addresses whether Defendant's disclosures during the proceedings relating to Plaintiff's request for a temporary restraining order waive the attorney-client privilege pursuant to Fed. R. Evid. 502(a). Plaintiff argues that Defendant "has already effectively disclosed the 'legal' reasons/grounds for its decision to add insurance and indemnity provisions to the parties' agreement at the 11th hour . . . . In light of these repeated disclosures regarding Amtrak's reasons for insisting on the new . . . contract terms, Amtrak has waived any attorney-client privilege on the subject matter of these terms . . . ." *Plaintiff's Letter* at 3. As noted earlier, Plaintiff contends that this alleged waiver impacts all of the documents at issue here, save for one. By contrast, Defendant counters that Plaintiff "does not – and cannot – contend that the information disclosed during the TRO stage was privileged. Subject-matter waiver under Rule 502(a), however, only comes into play after privileged information has been disclosed." *Defendant's Letter* at 5.

As noted by Defendant, waiver pursuant to Rule 502(a) is only implicated when the information previously disclosed was itself privileged. *See, e.g.*, *Johnson Outdoors, Inc. v. Gen'l Start Indem. Co.*, No. 05-C-0522, 2011 WL 196825, at *2 (E.D. Wis. Jan. 19, 2011); *Silverstein v. BOP*, No. 07-cv-02471-PAB-KMT, 2009 WL 4949959, at *10-12 (D. Colo. Dec. 14, 2009) (unpublished decision). Plaintiff characterizes Defendant's prior conduct as disclosure of "highly relevant information." It does not contend that such information was privileged. A cursory review of the TRO materials does not reveal the clear disclosure of privileged attorney-client communications. *See, e.g.*, *Defendants' Objection* [#7]. Moreover, the Court notes the general application here of the fact exception to the

attorney-client privilege rule which was discussed earlier.  Parties can be questioned about the relevant facts at issue in their case and cannot refuse to provide those facts on the basis of privilege.  Accordingly, a party should be permitted to convey such information in factual discussions and arguments regarding his case without waiver of the privilege.  Here, Defendant conveyed such information in an earlier phase of litigation.  Doing so does not waive the privilege with respect to attorney-client communications memorialized in documents which may happen to contain information which speaks to those justifications. Moreover, nothing prevented Plaintiff from seeking more information about Defendant's factual basis for its earlier arguments without attempting to obtain privileged information. Under Colorado law, the party seeking to overcome the attorney-client privilege on the basis of waiver has the burden of proof.  *Lee v. State Farm Mut. Auto. Ins.,* 249 F.R.D. 662, 682 (D. Colo. 2008).  Plaintiff has not met that burden here.

Accordingly, Plaintiff's oral Motion to compel the production of one-hundred sixty-nine (169) of the one-hundred seventy (170) documents at issue here on the basis of Rule 502(a) is denied.

IT IS FURTHER **ORDERED** that in accordance with this Order, on or before **April 21, 2011**, Defendant shall email to the Court unredacted copies of the five emails (Bates Nos. 2036, 4465, 7142, 668 and 2334) which remain in dispute as discussed in Part IV above.

Dated:  April 21, 2011

BY THE COURT:

s/ Kristen L.  Mix
Kristen L.  Mix
United States Magistrate Judge