**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No.  09-cv-02977-REB-KLM

IOWA PACIFIC HOLDINGS, LLC,

      Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORPORATION,

      Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL**

---

**Blackburn, J.**

      The matter before me is **Defendant's Motion To Alter or Amend Judgment or,**

**in the Alternative, Motion for New Trial on Damages** [#179][1] filed August 10, 2011.  I

deny the motion.

## I.  JURISDICTION

      I have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

      Defendant seeks to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(a)

and (e) based on alleged error in the jury instructions.  The bases for granting such a

motion are limited and include:

> (1) an intervening change in the controlling law, (2) new
> evidence previously unavailable, and (3) the need to correct
> clear error or prevent manifest injustice.  Thus, a motion for

---

[1]  "[#179]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

> reconsideration[2] is appropriate where the court has
> misapprehended the facts, a party's position, or the
> controlling law.  It is not appropriate to revisit issues already
> addressed or advance arguments that could have been
> raised in prior briefing.

*Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations

omitted).  A motion to alter or amend the judgment thus will not be granted except

where there is a "need to correct clear error or prevent manifest injustice."  *Id*.

Alternatively, defendant seeks a new trial on the issue of damages on the

grounds that I erroneously admitted plaintiff's summary damages exhibit and/or that the

jury's verdict as to damages was not supported by the evidence.  When a case has

been tried to a jury, a new trial may be granted "for any of the reasons for which new

trial have heretofore been granted in actions at law in the courts of the United States."

FED. R. CIV. P. 59(a)(1).  A motion for new trial "is not regarded with favor and should

only be granted with great caution."  *United States v. Kelley*, 929 F.2d 582, 586 (10th

Cir.), *cert. denied*, 112 S.Ct. 341 (1991).  The decision whether to grant a new trial is

committed to the sound discretion of the trial court.  *Id.*

In order to secure a new trial based on an allegedly improper evidentiary ruling,

defendant must show that my evidentiary rulings were both clearly erroneous and so

prejudicial that "it can be reasonably concluded that with or without such evidence, there

would have been a contrary result."  *Hinds v. General Motors Corp.*, 988 F.2d 1039,

1049 (10th Cir. 1993).  "Neither an error in the admission or exclusion of evidence nor an

---

[2] The standards governing motions to alter or amend the judgment under Rule 59(e) pertain to
motions to reconsider filed within the deadlines prescribed by Rule 59(e).  *Servants of the Paraclete*, 204
F.3d at 1012.

error in a ruling or order of the court, nor anything done or omitted by the court, can be grounds for granting a new trial unless the error or defect affects the substantial rights of the parties." *Stewart v. South Kansas and Oklahoma Railroad, Inc*., 36 F.Supp.2d 919, 920 (D. Kan. 1999).

A motion for a new trial based on the ground that the verdict is against the weight of the evidence presents a question of fact. *Patton v. TIC United Corp.*, 77 F.3d 1235, 1242 (10th Cir.), *cert. denied*, 116 S.Ct. 2525 (1996); *Brown v. McGraw-Edison Co.*, 736 F.2d 609, 616 (10th Cir. 1984). In reviewing the motion, I may "not weigh the evidence, pass on the credibility of the witnesses, or substitute [my] conclusions for that of the jury." *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1279 (10th Cir. 2003) (citation and internal quotation marks omitted). The motion should be granted only "if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Id.* (citation and internal quotation marks omitted).

## III.  ANALYSIS

Defendant claims that I erred in instructing the jury on reliance damages because such are not recognized under the law of the District of Columbia, which governed plaintiff's breach of oral contract claim. Further, and alternatively, it claims that a new trial on the issue of damages is warranted because of the erroneous admission of a summary damages exhibit and/or because the jury's verdict as to damages was unsupportable. I disagree on all three fronts, and, therefore, deny the motion.

### A.  Reliance Damages as Alternative Measure for Breach of Contract

Prior to trial the parties submitted their jury instructions, which included two instructions relating to damages for breach of contract.  The first purported to inform the jury how to calculate damages for breach of contract:

> The measure of damages for a breach of contract is that amount of money necessary to place the injured party in the same economic position it would have been in if the contract had not been breached.  To calculate the damages, first determine the amount of money Iowa Pacific would have received had the contract not been breached.  Next, add both incidental damages and consequential damages, if any.  Lastly, subtract from that any money it saved because it did not have to complete the contract.
>
> Incidental damages include any costs Iowa Pacific incurred while making reasonable efforts to avoid losses, whether the efforts were successful or not.  Consequential damages include damages resulting from the breach, such as injury to persons or property.

(**Stipulated Jury Instructions** App., Exh. 22 [#130], filed May 27, 2011.)[3]  I perceived that this instruction inappropriately conflated the alternative damage theories of lost profits and reliance damages, both of which plaintiff had preserved (*see* **Final Pretrial Order** ¶ 1 at 3 [#116], filed May 18, 2011), and, therefore, ordered the parties to resubmit the damages instructions.

Defendant resubmitted the original instruction, arguing that reliance damages were not available under District of Columbia law.  (***See* Defendant's Submission of Proposed Jury Instructions** App., Exh. 1 [#175], filed July 11, 2011.)  I disagreed and submitted to the jury an instruction premised primarily on plaintiff's more recent

---

[3]  A second instruction informed the jury of the availability of nominal damages if "there are no proven damages resulting, or [if] the damages are only speculative."  (**Stipulated Jury Instructions** App., Exh. 23.)

proposal:

> If you find that defendant breached an oral contract with plaintiff and find also that defendant's breach was not excused, then you must award damages to plaintiff.
>
> There are two alternative measures of damages for breach of contract: lost profits and reliance damages.
>
> To calculate lost profits, you should determine the amount of money plaintiff would have received had the contract not been breached.  Then subtract from that amount any money plaintiff saved because it did not have to complete the contract.
>
> Alternatively, the measure of damages for breach of contract is plaintiff's reliance damages.  Reliance damages include the expenditures reasonably made by plaintiff in preparation for performance or in performance of the contract.
>
> You are to award plaintiff damages to fully compensate it for defendant's breach of contract.  Although plaintiff cannot recover both lost profits and reliance damages, you may award both, and plaintiff will have the option of electing its measure of damages.

Concomitantly, I revised the verdict form to allow the jury to record its verdict as to the amount of damages attributable both to lost profits and reliance damages.  The jury returned a verdict awarding plaintiff nothing in lost profits and $1,679,325 in reliance damages.[4]

Defendant claims I erred because the relevant law does not allow for the recovery of reliance damages.  Defendant claims to have found no case applying D.C. law that adopts reliance damages as a measure of recovery on a contract and none applying section 349 of the Restatement (Second) of Contracts, which addresses such

---

[4] The award was later reduced to $1,149,950 due to plaintiff's failure to mitigate.

damages.  Defendant argues that the only alternatives recognized under District of

Columbia law for a breach of contract action are lost profits or, if "the proof of damages

is vague or speculative, . . . nominal damages."  *Garcia v. Llereana*, 599 A.2d 1138,

1142 (D.C. 1991) (footnote omitted).  Defendant concludes that I should have given the

jury its instruction, which recites verbatim a D.C. pattern instruction.

I am unpersuaded.  First, pattern jury instructions, while helpful, themselves are

not law, nor do they have the force and effect of law.  *See United States v. Carter*, 172

Fed. Appx. 883, 887 (10th Cir. March 29, 2006) ("[A] proposed pattern jury instruction is

not legal authority."), *cert. denied*, 127 S.Ct. 194 (2006).[5]  Thus, while a pattern

instruction may be persuasive if it accurately reflects the applicable law, it is not binding

under any circumstance.  *See id.*; *accord Welch v. United States*, 604 F.3d 408, 421

n.15 (7th Cir. 2010), *cert. denied*, 180 L.Ed.2d 844 (2011); *Quanta Services Inc. v.

American Administrative Group Inc.*, 384 Fed. Appx. 291, 296 (5th Cir. Dec. 2, 2008);

*United States v. Dohan*, 508 F.3d 989, 994 (11th Cir. 2007), *cert. denied*, 128 S.Ct.

2450 (2008).  Only a judicial decision can have that effect.  *See Carter*, 172 Fed. Appx.

at 887; *United States v. Ledford*, 154 Fed. Appx. 692, 706 (10th Cir. Nov. 15, 2005),

*cert. denied*, 127 S.Ct. 165 (2006).  Defendant has not cited, nor have I found, any

court decision even addressing the D.C. pattern jury instruction on which defendant

relies, much less confirming that it accurately states the law of the District of Columbia.

Accordingly, the mere existence of the pattern instruction does not advance defendant's

argument.

---

[5] Nor can the parties' prior stipulation be considered in any way binding, particularly if the stipulated instruction misstates the law.

6

Second, while there may be no D.C. authority directly addressing the issue of reliance damages, neither does it appear that any court has affirmatively concluded that such damages are *not* available pursuant to District law.  The conclusion to be drawn from a lack of decisional law is not necessarily that the courts of the jurisdiction have rejected reliance damages.  Instead, I must make my best "***Erie*** guess"[6] as to what the District of Columbia highest court would hold if squarely faced with the issue.  ***Rexrode v. Allstate Indemnity Co.***, 616 F.Supp.2d 1106, 1108 (D. Colo. 2007) (citing ***Pehle v. Farm Bureau Life Insurance Co.***, 397 F.3d 897, 901-02 (10th Cir. 2005)).

Based on that principle, I found the D.C. Circuit's decision in ***Nashville Lodging Co. v. Resolution Trust Corp***. persuasive.  Of course, I am aware that this decision invoked federal common law to decide a cause of action under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), rather than the law of the District of Columbia.  ***See id.***, 59 F.3d 236, 245-46 (D.C. Cir. 1995).  Nevertheless, ***Nashville Lodging*** makes clear that reliance damages are a well-recognized and widely accepted form of recovery for breach of contract.  ***See id***. (citing, *inter alia*, McCormick, ***Damages*** § 142 at 583-84; **RESTATEMENT (SECOND) OF CONTRACTS** § 344(b); L.L. Fuller & William R. Perdue, Jr., ***The Reliance Interest in Contract Damages (Part 1)***, 46 Yale L.J. 52, 54 (1936); and ***United States v. Behan***, 110 U.S. 338, 344-45, 4 S.Ct. 81, 83-84, 28 L.Ed. 168 (1884)).  ***See also In re Peanut Crop Insurance Litigation***, 524 F.3d 458, 470-71 (4th Cir. 2008) (noting that federal common law applicable to

---

[6]  ***See Erie Railroad Co. v. Tompkins***, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

government contracts derives from principles of general contract law, including the
Restatement), *cert. denied*, 129 S.Ct. 1001 (2009).  Defendants have presented
nothing to suggest that the courts of the District of Columbia, when faced with novel
questions of contract law, do not follow the general common law of contracts and the
authoritative treatises expounding it.  *See Wright v. Sony Pictures Entertainment,
Inc.*, 394 F.Supp.2d 27, 33 (D.D.C. 2005) (noting that, in absence of statute or
controlling decision of common law, D.C. courts routinely turn to the Restatement as a
source of persuasive authority).

Even more persuasive, however, is the principle that, "in the absence of
authorities in the District of Columbia, decisions of Maryland courts on questions of
common law are authoritative, since [District of Columbia courts] derive our common
law from Maryland."  *Clark v. Route*, 951 A.2d 757, 763 n.5 (D.C. 2008) (citing *Baker
v. Gaffney*, 141 F.Supp. 602, 603 (D.D.C.1956)).  Maryland courts have recognized
reliance damages as an alternative measure of damages for breach of contract.  *See
CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 32 A.3d 456, 347 (Md. App. 2011)
("Under Maryland law, a party may recover for expenditures made in reliance on a
contract but not strictly in part performance of it, or as necessary preparation for
performance.") (quoting *Dialist Co. v. Pulford*, 399 A.2d 1374, 1379-80 (Md. App.
1979)).[7]

---

[7] The principles underlying this alternative measure of damages were set forth at length in
*Dialist*:

Under ordinary circumstances the measure of damages for a breach of contract is that
sum which would put plaintiff in as good a position as he would have occupied had the
contract been fully performed, subject of course, to the limitations of remoteness and
speculativeness.  Such sum is usually the amount of profit which would have been

Therefore, I find and conclude that the highest court of District of Columbia, the Court of Appeals, would follow the lead of its Maryland brethren and adopt the "unremarkable proposition that although contract law is usually concerned with a party's expectation interest, in some circumstances it also protects a party's restitution interest." *Glynn v. Impact Science & Technology, Inc.*, 807 F.Supp.2d 391, 430 (D. Md. 2011) (interpreting New Hampshire law).[8]  Defendant's motion pursuant to Fed. R. Civ. P. 59(e) therefore is denied.

### B.  Admission of Summary Exhibit

Defendant next assigns error to my ruling allowing the admission of Plaintiff's Exhibit 192, a summary report detailing plaintiff's expenses related to the ski train after November 2, 2009.  The exhibit was proffered as a business record under Fed.R.Evid.

---

derived from the agreement had no breach occurred.  Where the non-defaulting party has incurred expenses in preparation for, or part performance of, the contract such expenses may also be recovered.  Cases arise where, for one reason or another, it is impossible to prove with any reasonable certainty the amount of such expected profits.  In that event, the law does not necessarily leave the aggrieved party without remedy.  The applicable rule under such circumstances is succinctly stated in 5 Corbin, *Contracts*, s 1031, pages 188-191 (1964):

> "It is often very difficult to estimate the amount of profits that have been prevented by the breach of contract not only because of uncertainty in the happening of various contingencies, but also because of difficulty in determining the money value of a promised performance or the cost of completion by the plaintiff. There is usually little difficulty, however, in proving what has already been expended by the plaintiff prior to the date of breach by way of preparation and part-performance. The fact that profits are too uncertain for recovery does not prevent a judgment in favor of the plaintiff for the amount of his expenditures. This rule has been recognized and applied many times by the courts; and it has been stated as an alternative measure of recovery by the American Law Institute, with certain limitations . . . ." (Footnotes omitted.)

*Dialist*, 399 at 1379-80.

[8]  As plaintiff points out in its brief, no less than 31 states have adopted reliance damages as a form of compensation for breach of contract in appropriate circumstances, whereas only one has clearly rejected them.  (*See* **Plf. Resp. Br.** at 8-9 [#187], filed August 31, 2011.)

803(6), and I initially admitted it under the aegis of that rule.  However, when the

sponsoring witness subsequently testified that the exhibit had been prepared for

purposes of this litigation, I found alternatively that the exhibit was admissible as a

summary pursuant to Fed.R.Evid. 1006.  Defendant claims this was error, as plaintiff

never laid the proper foundation for the admission of the exhibit as a summary and had

failed to make available to defendant the information on which the summary was based.

I begin by reviewing the basic legal principles that underlie these evidentiary

issues.   Rule 1006 for the Federal Rules of Evidence provides:

> The contents of voluminous writings, recordings, or
> photographs which cannot conveniently be examined in
> court may be presented in the form of a chart, summary, or
> calculation.  The originals, or duplicates, shall be made
> available for examination or copying, or both, by other
> parties at reasonable time and place.  The court may order
> that they be produced in court.

FED.R.EVID. 1006.  The same broad discretion that pertains to evidentiary rulings

generally applies equally to the admission of a summary under this rule.  *United States*

*v. Thompson*, 518 F.3d 832, 858 (10th Cir. 2008); *Trans-Rim Enterprises (USA), Ltd.*

*v. Adolph Coors Co.*, 1995 WL 231381 at *3 (10th Cir. April 7, 2005).  A summary is

admissible if the records on which it is based themselves are admissible.  *Trans-Rim*

*Enterprises*, 1995 WL 231381 at *3; *United States v. Samaniego*, 187 F.3d 1222,

1223 (10th Cir. 1999).  With respect to computer business records specifically, they are

admissible if

> (1) they are kept pursuant to a routine procedure designed to
> assure their accuracy, (2) they are created for motives that
> tend to assure accuracy (*e.g.* not including those prepared
> for litigation), and (3) they are not themselves mere

accumulations of hearsay.

***United States v. Hernandez***, 913 F.2d 1506, 1512 (10th Cir. 1990), ***cert. denied***, 111 S.Ct. 1111 (1991).

At trial, based on testimony that the exhibit had been generated for the purpose of this lawsuit, I reversed my initial determination that the exhibit itself was properly qualified as a business record.  This ruling was not erroneous, since the summary *qua* summary was not kept in the regular course of plaintiff's business.  Nevertheless, the fact remains that the underlying records on which the summary was based were admissible as business records.  "The business records exception focuses upon whether data was inputted, not extracted, as a regular business practice."  ***Trans-Rim Enterprises (USA)***, 1995 WL 231381 at *4.  "[S]o long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice, the fact that the hard copy offered as evidence was printed for purposes of litigation does not affect its admissibility."  ***Hernandez***, 913 F.2d at 1512-13.  Plaintiff laid a proper foundation for the admission of the summary on that basis.[9]

Finally, defendant suggests that plaintiff failed to provide it with the underlying documentation supporting the summary.  Defendant has provided nothing more than its own *ipse dixit* to support this allegation, and plaintiff counters that it did provide all supporting documentation.  Moreover, the 21-page "reconciliation report" defendant appended to its trial brief (***see* Defendant's Trial Brief** App., Exh. 8 [#153], filed June

---

[9] It is true that plaintiff never offered the exhibit as a summary under Rule 1006.  Nevertheless, defendant offers nothing to support its implicit argument that such failure somehow precludes me from admitting the evidence on any basis supported by the record.

20, 2011), demonstrates that defendant was supplied with underlying documentation prior to trial, and in enough time to prepare a minutely detailed, color-coded spreadsheet setting forth the alleged inaccuracies in the summary exhibit.  Its claim to have been denied the foundational documents as required by Rule 1006, therefore, rings false, and I reject it.

Moreover, to the extent that the exhibit may include inaccurate information – which defendant has not proven – "[t]he inaccuracy of a summary under Rule 1006 . . . goes to the weight, rather than the admissibility, of the evidence."  *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 130 (S.D.N.Y. 2000) (citing *In re Richardson–Merrell, Inc. "Bendectin" Products Liability Litigation*, 624 F. Supp. 1212, 1224-26 (S.D. Ohio 1985), *aff'd*, 857 F.2d 290 (6th Cir. 1988), *cert. denied*,109 S.Ct. 788 (1989)). However, defendant failed to take advantage of its opportunity on cross-examination of the sponsoring witness, Mr. Marko, to explore these alleged inaccuracies and omissions in the exhibit.  *See United States v. Lewis*, 594 F.3d 1270, 1282 (10th Cir.) ("The purpose of requiring the party offering a summary to make the underlying documents available to the opposing party is to enable the opposing party to check the accuracy of the summary."), *cert. denied*, 130 S.Ct. 3441 (2010).  Defendant's failure to delve into these allegedly fatal inaccuracies during cross-examination puts it in no position to complain of error in the exhibit's admission.  *See United States v. Mann*, 884 F.2d 532, 539 (10th Cir. 1989) (no abuse of discretion in admitting summary charts where defendant failed to cross-examine sponsoring witness); *State Office Systems, Inc. v. Olivetti Corp. of America*, 762 F.2d 843, 846 (10th Cir. 1985) (weight to be afforded

summary exhibit was for jury where defendant had ample opportunity to cross-examine witness). *See also United States v. Lefevbre*, 1994 WL 315669 at *1 (9th Cir. June 29, 1994) ("A summary chart is admissible despite claims that it is 'unverified' or 'self-calculated,' if the opponent has the opportunity to reveal any inaccuracies through cross- examination."); *United States v. Paulino*, 935 F.2d 739, 753 (6th Cir.) ("[T]he defendants had an full opportunity to cross-examine the witness and thereby alleviat[e] any danger of inaccuracy or unfair characterization.") (citation and internal quotation marks omitted; second alteration in original), *cert. denied*, 112 S.Ct. 315 (1991), *and cert. denied*, 112 S.Ct. 323 (1991), *and cert. denied*, 112 S.Ct. 660 (1991), *and cert. denied*, 112 S.Ct. 883 (1992) (*superseded by statute on other grounds as stated in United States v. Caseslorente*, 220 F.3d 727, 734-36 (6th Cir. 2000)).

Thus, I find and conclude that admission of Exhibit 192 pursuant to Fed.R.Evid. 1006 was not in error and did not prejudice defendant in any event.  Its motion for new trial on this basis must be denied.

### C.  Substantiation of the Jury's Verdict as to Damages

Finally, defendant claims that the jury's awards of $425,000 for "advertising" and another $425,00 in labor costs is unsupported.  I disagree.  The evidence was sufficient to sustain the jury's determination and allocation of these damages.  Thus, the motion for new trial on this ground also is denied.

**THEREFORE, IT IS ORDERED** that  **Defendant's Motion To Alter or Amend Judgment or, in the Alternative, Motion for New Trial on Damages** [#179] filed August 10, 2011, is **DENIED**.

Dated February 14, 2012, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

14